UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| KEVIN W. STANBRIDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:24-cv-04061-JEH |
| ) | |
| ) | |
| WEXFORD HEALTH SOURCES, ) | |
| INC., TINA BATTERTON, and ) | |
| DULCE QUINTERO, ) | |
| ) | |
| Defendants. ) | |

**Order**

**I**

**A**

This cause is before the Court on Defendants' motions for summary judgment. Plaintiff, Kevin W. Standridge, is a civil detainee at the Illinois Department of Human Services' Treatment and Detention Facility in Rushville, Illinois (Rushville). Defendant, Tina Batterton, is a licensed practical nurse who is employed by Defendant, Wexford Health Sources, Inc. (Wexford).[1] During the relevant time, Nurse Batterton worked for Wexford at Rushville and provided medical care to the detainees housed at Rushville. Defendant Dulce Quintero is the Secretary of the Illinois Department of Humans Services.

On April 10, 2024, Plaintiff filed this case under 42 U.S.C. § 1983 alleging a violation of his Constitutional rights. On May 17, 2024, the Court conducted a

---

[1] At the relevant time Wexford maintained a contract with the State of Illinois to provide health care services to detainees at Rushville.

1

review of Plaintiff's Complaint in order to determine if his Complaint stated a claim upon which relief could be granted sufficient to grant his motion for leave to proceed *in forma pauperis* in this case. In its Order, the Court found that Plaintiff's Complaint stated a claim against Nurse Batterton for violating his Fourteenth Amendment Due Process rights based upon the medical attention (or lack thereof) that he received on December 31, 2023, and the days following thereafter. The Court also determined that Plaintiff's Complaint stated a claim against Wexford based upon the United States Supreme Court's holding in *Monell v. Department of Social Servs. of the City of New York*, 436 U.S. 658 (1978). Finally, in a subsequent Order, the Court clarified that Plaintiff's Complaint stated an official capacity claim against Secretary Quintero for instituting and maintaining an unconstitutional policy that violated Plaintiff's Constitutional rights. Defendants have now moved for summary judgment on Plaintiff's claims against them.

**B**

Plaintiff has been a civil detainee at Rushville for twenty years. On the morning of December 31, 2023, Plaintiff informed Nurse Batterton at morning "med pass line"[2] that he did not feel right and that he was feeling dizzy. According to Plaintiff, his dizziness was beyond the vertigo that he normally experienced.

---

[2] During his deposition, Plaintiff explained that, usually, Rushville had a morning, regular med pass line around 7:30 a.m., a diabetic line around 11:30 a.m., another diabetic line around 7:30 p.m., and another regular med pass around 8:00 p.m. Although Rushville maintained more than these two diabetic lines, those two lines were the ones that Plaintiff participated in to obtain his diabetic medication. The diabetic line is separate from the regular med pass. Within the regular med pass line, Rushville residents are summoned one pod at a time are given medication while they are in line. Residents, then, take their medication and complete the med pass process. Rushville residents are not given bubble packs full of their medicine. Instead, Rushville requires the residents to stand in line, receive the medication from the nurse, and take the medicine while they are in line.

2

Plaintiff also informed Nurse Batterton that he was experiencing an upset stomach and nausea.

In response to his complaints, Nurse Batterton told Plaintiff that he could sign up for the nurse sick call line, but Plaintiff replied that he did not believe that he could wait for the nurse sick call. But Nurse Batterton explained to Plaintiff that the policy was that, unless it was an emergency, he would need to wait for the nurse sick call. Finally, Nurse Batterton advised that the next day was a holiday (*i.e.*, January 1, 2024), and therefore, there would not be nurse sick call until January 2, 2024. Nurse Batterton then instructed Plaintiff to "move on" so that she could continue with her med line duties. Before he left, Nurse Batterton gave his medications to Plaintiff, which he took before returning to his room.

At (approximately) 11:30 a.m. that same day, Nurse Batterton saw Plaintiff, again, at the diabetic line. Plaintiff used his walker to proceed to the diabetic line, and Nurse Batterton provided Plaintiff's diabetes medication to him. Upon receiving his diabetic medication, Plaintiff requested some Tylenol from Nurse Batterton, and Nurse Batterton told Plaintiff that he would need to wait for evening med pass line.

Nurse McKenna performed the evening med pass line on December 31, 2023. At 8:00 p.m., Plaintiff's roommate attempted to wake Plaintiff who was asleep. Plaintiff's roommate was troubled by Plaintiff's lethargy, and so, he spoke with Security Therapist Aide Brown about Plaintiff's state. STA Brown checked on Plaintiff's condition, and then, he informed Nurse McKenna of Plaintiff's situation. In response, Nurse McKenna stopped performing her med line duties and came to evaluate Stanbridge. Nurse McKenna checked Plaintiff's blood pressure, and then she instructed Plaintiff to drink lots of water. Finally, Nurse McKenna indicated that she would return after she had finished her med line duties.

3

At 9:00 p.m., on December 31, 2023, Nurse McKenna returned to take Stanbridge's vital signs. At that time, Plaintiff's blood pressure was 89 over 74, his pulse was 130, his oxygen level was 93 percent, and his temperature was 99.9 degrees. Thereafter, Nurse McKenna contacted Dr. Lochard about Plaintiff's condition, and Dr. Lochard reiterated that Plaintiff should drink fluids. Plaintiff complied by drinking some water from 9:00 p.m. until midnight, but he mostly slept.

Nurse McKenna returned after midnight on January 1, 2024, to check on Plaintiff, and she was concerned about his blood pressure. At 12:15 a.m., Nurse McKenna took Plaintiff's vital signs, which reflected that he had a blood pressure of 60 over 36, a pulse rate of 105, an oxygen level of 93%, and a temperature of 97 degrees. Plaintiff's vitals were taken again at 12:30 a.m., which reflected a lowering blood pressure of 73 over 48 and a pulse rate of 105. At 12:33 a.m., a Code 3 was issued for Plaintiff, and an ambulance was called to take Plaintiff to a local emergency room. At that time, Plaintiff's vital signs reflected that his blood pressure was 75 over 47, his pulse rate was 99, and his temperature was 97.2 degrees.

When the ambulance arrived at 12:45 a.m., Plaintiff's blood pressure was 85 over 55. The ambulance transported Plaintiff to Sarah Culbertson Hospital in Rushville, Illinois around 1:15 a.m. on January 1, 2024. At Sarah Culbertson Hospital, Plaintiff was diagnosed with sepsis due to a urinary tract infection. Plaintiff received antibiotics and lots of water to drink while he was at Sarah Culbertson Hospital.

On January 5, 2024, Plaintiff returned to Rushville. Upon his return to Rushville, Plaintiff's vital signs were within the normal ranges. Plaintiff went straight to his room at Rushville; he was not taken to the infirmary because he stated that he felt well enough to go back to his room at that time.

## II

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (Brennan, J., dissenting) (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

III

A

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"—*i.e.*, provide adequate medical care. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). When the State is tasked with providing adequate medical care, State officials must "either procure treatment, provide treatment, or both." *Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011).

Here, Plaintiff is a civil detainee at Rushville, and therefore, his medical claim is governed by the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). But what, exactly, Plaintiff must prove in order to prevail on his medical claim under the Fourteenth Amendment has been the issue of considerable debate recently.

In *Estate of Stephenson by Coad v. Calumet County*, 2024 WL 6043304 (E.D. Wis. Nov. 19, 2024), United States District Judge William C. Griesbach provided a thorough history of Constitutional claims brought by prisoners versus Constitutional claims brought by detainees. Therein, Judge Griesbach discussed relevant United States Supreme Court precedent as well as case law from the United States Court of Appeals for the Seventh Circuit. Judge Griesbach characterized the state of the law on this dichotomy as follows:

> Since the Seventh Circuit's decision applying *Kingsley* to failure to act claims in *Miranda*, district courts and the Seventh Circuit itself have wrestled with the question of how to define the state of mind element for failure to act claims brought by pre-trial detainees. *See Pittman v. Madison County*, 108 F.4th 561, 566 (7th Cir. 2024) (*Pittman IV*) (affirming district court judgment, despite error in jury instruction, after three appeals and three trials spanning some 16 years, noting that "numerous cases have required us to grapple with the nuances

6

of the state-of-mind requirements in claims brought by pretrial detainees"). *Pittman IV*, the most recent of failure to act cases brought by pretrial detainees that the Seventh Circuit has decided, attempted to definitively clarify the "confusion" and "inconsistency" in the court's case law implementing "*Kingsley*'s standards outside the context of a pretrial detainee's claim of excessive force." *Id.* at 569. There, the court acknowledged that its "observation in *Miranda* that *Kingsley* asks whether a defendant 'acted purposefully, knowingly, *or perhaps even recklessly when they considered the consequences of their handling of [a plaintiff's] case*' ... reintroduce[ed] what *Kingsley* prohibited: consideration of a defendant's 'intent (or motive) to punish.' " *Id.* at 570–71 (emphasis added) (quoting *Kingsley*, 576 U.S. at 398, 135 S. Ct. 2466).

After acknowledging this mistake, *Pittman IV* made clear that once a pretrial detainee proves that the defendant officer's failure to act was purposeful and intentional, the sole question is an objective one: did the defendant "take reasonable available measures to abate the risk of serious harm?" *Id.* at 572. As the court emphasized, "[t]he objective reasonableness of a decision to deny medical care ... does not consider the defendant's subjective views about risk of harm and necessity of treatment. Instead, the proper inquiry turns on whether a reasonable officer in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.* at 570.

When applying *Kingsley* in failure to act cases, it seems that the first prong of the test will usually be met. Absent of the kind of negligence the court described in *Miranda*, the failure to act will always be considered a deliberate or purposeful choice. It thus appears that the test for the denial of medical care for a pretrial detainee in most cases is likely to come down to whether a reasonable person, in the position of the defendant, would have acted to prevent the harm suffered by the plaintiff.

*Id*. at * 7-8 (emphasis in original).

**B**

This Court agrees with Judge Griesbach's pronouncement on the current state of the law regarding Fourteenth Amendment medical claims brought by detainees. Accordingly, this Court must conduct a two-step analysis of Plaintiff's claim. *First*, the Court must ask whether Nurse Batterton acted intentionally, knowingly, or recklessly "with respect to the bringing about of certain physical consequences into the world.'" *Pittman*, 18 F.4th at 570 (quoting *Kingsley*, 576 U.S. at 395. "This framing asks strictly whether the defendant intended to commit the physical act that caused the alleged injury." *Id.* If Plaintiff can satisfy this first inquiry, the second inquiry is whether Nurse Batterton acted "reasonably" with respect to the condition created by the action. *Id.* Nurse Batterton's subjective views cannot be considered at this step. *Id.* With respect to Plaintiff's specific claim that Nurse Batterton denied adequate medical care to him:

> The objective reasonableness of a decision to deny medical care likewise does not consider the defendant's *subjective* views about risk of harm and necessity of treatment. Instead, the proper inquiry turns on whether a reasonable officer in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care.

*Id.* (emphasis in original); *Zemlick v. Burkhart*, 2024 WL 4279491, * 8 (S.D. Ind. Sept. 6, 2024).[3]

At this point, it is important to note that Nurse Batterton only had two interactions with Plaintiff that are relevant to this lawsuit. On the morning of December 31, 2024, Plaintiff saw Nurse Batterton during the regular med line.

---

[3] Nurse Batterton and Wexford argue that it is time for the courts to overrule *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) and *McCann v. Ogle County, Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). However, this Court is bound to follow the dictates of the Seventh Circuit, not to overrule that court.

Plaintiff testified during his deposition that he had the following exchange with Nurse Batterton:

> A. Yeah, well, you know the drill, sign up for nurse sick call. And I said I did not think I could wait until tomorrow morning's sick call. She said, well, unless it's an emergency, that's what you will have to do. And then I said, how will I know if it's an emergency? Do I need to be down on the floor bleeding and flopping around? Oh, and then she said, oh, yeah, tomorrow's a holiday so there won't be a nurse Sick call until Tuesday. And then I said, what, the nurses don't work on holidays? And that's when she told me to move on.

D/E 40-1 at p. 32. Thereafter, Plaintiff went about the rest of his normal day, although he claims that he still did not feel right. *Id*. at pgs. 32-36.

Plaintiff's second interaction with Nurse Batterton occurred around 11:30 a.m. on December 31, 2023, during the diabetic med line. At this interaction, Plaintiff asked Nurse Batterton for some Tylenol, but Nurse Batterton told Plaintiff that he could not receive that medication at the diabetic med line. *Id*. at pgs. 36-39. Plaintiff's glucose levels were then checked, and Nurse Batterton administered the appropriate amount of insulin to Plaintiff. *Id*.

Like Judge Griesbach noted in *Estate of Stephenson*, satisfying the first element to Plaintiff's Due Process medical claim is relatively easy because Nurse Batterton made the intentional decision not to stop what she was doing and attend to Plaintiff's complaints during the med lines. Instead, Nurse Batterton consciously made the decision to follow the relevant policy and to tell Plaintiff to utilize the nurse sick call process.

But the Court cannot say that a reasonable jury could find that Plaintiff has satisfied the second element necessary to prevail on his Due Process medical claim against Nurse Batterton, *i.e.*, that Nurse Batterton did not act reasonably in response to Plaintiff's medical complaints. Plaintiff argues that Nurse Batterton

9

did not need to stop the med line for him; rather, she could have sent him to the medical unit for an immediate evaluation.

However, Plaintiff must take some responsibility for his medical care as well. As quoted above, Plaintiff did not tell Nurse Batterton that he needed immediate medical attention, nor did he tell her that he was having a medical emergency.[4] Even when Nurse Batterton told Plaintiff that he needed to utilize the nurse sick call process unless he was having a medical emergency, Plaintiff did not respond by telling Nurse Batterton that he was.

Moreover, the undisputed evidence shows that Plaintiff was not having a medical emergency when he spoke with Nurse Batterton on either occasion.[5] After his interaction with Nurse Batterton at 7:30 a.m., Plaintiff went about the remainder of his day with little deviation. At his second interaction with Nurse Batterton, Plaintiff did not indicate that his medical condition had worsened or that he was then having a medical emergency. Instead, Plaintiff simply asked for Tylenol for his headache. Given his limited interaction with Nurse Batterton and given his generalized complaints, a reasonable jury could not find in Plaintiff's

---

[4] In fact, Plaintiff specifically concedes in his response to Secretary Quintero's motion for summary judgment that he never claimed that he was having an emergency. D/E 45 at p. 7.

[5] Notably, neither Nurse McKenna nor Dr. Lochard understood Plaintiff as being in an emergent situation until 9:00 p.m. on December 31, 2023, when Nurse McKenna called for an ambulance to take Plaintiff to a local hospital. Until then, both medical professionals apparently agreed with Nurse Batterton that immediate, medical intervention was not necessary for Plaintiff because, prior to 9:00 p.m., both Nurse McKenna and Dr. Lochard decided simply to observe Plaintiff's condition rather than take immediate action. Accordingly, a jury could not find that Nurse Batterton acted unreasonably with regard to Plaintiff's medical needs when two subsequent medical professionals agreed that immediate action was not necessary.

favor on his Due Process medical claim against Nurse Batterton. Therefore, Nurse Batterton is entitled to summary judgment.

## C

As for Plaintiff's *Monell* claim, Wexford is also entitled to summary judgment. Because the Court has found that Wexford's employee (*i.e.*, Nurse Batterton) is entitled to summary judgment, Wexford is also entitled to summary judgment. Unless a Wexford employee(s) can be said to have been guilty of violating Plaintiff's Constitutional rights, any alleged policy that Wexford's employee(s) was following cannot be said to have caused Plaintiff to suffer a Constitutional injury. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (holding that it was unnecessary to determine what Wexford's policy was where the plaintiff failed to establish a Constitutional problem with his treatment and did not suffer an actionable injury from the policy attributed to Wexford). *Dismukes v. Baker*, 2015 WL 1208654, * 2 (C.D. Ill. Mar. 13, 2015).

In any event, as explained below, Plaintiff has failed to identify any policy, practice, or procedure employed or followed by Wexford that violated his Constitutional rights. *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Accordingly, Wexford is entitled to summary judgment on Plaintiff's *Monell* claim against it.

## D

Finally, Secretary Quintero is entitled to summary judgment on Plaintiff's official capacity claim against her. As the Court explained in its September 23, 2024 Order, the Eleventh Amendment to the United States Constitution prohibits Plaintiff from recovering monetary damages from Secretary Quintero. D/E 24 at p. 3 (citing *de Lima Silva v. Department of Corrections*, 917 F.3d 546, 565 (7th Cir. 2019)). Instead, Plaintiff is limited to seeking injunctive relief against Secretary

Quintero. *Id*. (citing *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997) and *Rasho v. Jeffreys*, 22 F.4th 703, 712 (7th Cir. 2022)).

The undisputed facts show that Plaintiff does not have an on-going violation of his Constitutional rights that would support the Court entering an injunction in his favor and against Secretary Quintero. On the contrary, the undisputed evidence show that, as of January 5, 2024, Plaintiff returned to Rushville from the local hospital, and he returned to his assigned room because all of his vital signs were within normal ranges. Therefore, Plaintiff is not entitled to any relief from Secretary Quintero. *See Marie O*, 131 F.3d at 615 (holding that, under *Ex parte Young*, 209 U.S. 123, 159-60 (1908), a plaintiff may file "suit[ ] against state officials seeking prospective equitable relief for *on-going* violations of federal law….") (emphasis added); *see also Vasquez v. Rigueur*, 2019 WL 288123, * 8 (E.D. Wis. Jan. 18, 2019) ("In short, because the plaintiff has provided no evidence of an on-going violation of his rights, no jury could reasonably find that he is entitled to any relief.")

Finally, even if the Court were to consider the policies instituted by Secretary Quintero as leading to a violation of Plaintiff's Constitutional rights that are capable of being repeated so that injunctive relief could be proper, the undisputed evidence does not show that the policies violated or could have violated Plaintiff's Constitutional rights as he alleged in his Complaint.[6] *See, e.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 109–10 (1983); *Tobin for Governor v. Illinois State Bd. of Elections,* 268 F.3d 517, 528–29 (7th Cir. 2001). Initially, the Court notes

---

[6] Plaintiff claims that he is experiencing negative side-effects and on-going medical issues as a result of his medical condition on that Nurse Batterton failed to address properly on December 31, 2023. However, Plaintiff has failed to offer any evidence with which to show that he has any current medical concerns or that those concerns are causally related to anything that Nurse Batterton did or did not do on December 31, 2023.

that "the capable-of-repetition doctrine applies only in exceptional situations," *Lyons,* 461 U.S. at 109. Specifically, the doctrine applies only "when (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again," *Tobin for Governor,* 268 F.3d at 529 (citing *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 1870 (1979)); *Worldwide St. Preachers' Fellowship v. Peterson*, 388 F.3d 555, 559 (7th Cir. 2004). Plaintiff has made no such showing in this case.

Perhaps more importantly, Plaintiff alleged in his Complaint that Defendant Quintero had instituted an unconstitutional policy at Rushville that required detainees at Rushville to utilize the nurse sick call line in order to obtain medical care—even in emergency situations. But the policy does not contain the provision asserted by Plaintiff. Instead, the policy at issue provides: "If you are experiencing a medical emergency notify unit staff immediately." D/E 42-1. In addition, the relevant policy also provides: "After notification of potential medical emergency, healthcare staff shall respond immediately to the area with first responder equipment and evaluate the resident." D/E 42-2.

Therefore, contrary to his allegation in his Complaint, the policies that Plaintiff alleged that Secretary Quintero instituted that violated his Constitutional rights do not say what he alleged them to say. On the contrary, the IDHS's policies give nurses and medical professionals the option to by-pass the nurse sick call line in emergency situations or when otherwise warranted. As such, Secretary Quintero is entitled to summary judgment because the undisputed facts are contrary to what Plaintiff claimed them to be.

**IT IS, THEREFORE, ORDERED:**

    **1.** **Defendant Dulce Quintero's motion for summary judgment [42] is GRANTED.**

2. Defendants Tina Batterton and Wexford Health Sources, Inc.'s motion for summary judgment [40] is also GRANTED.

3. Accordingly, the Clerk of the Court is directed to enter judgment, with prejudice, in all Defendants' favor and against Plaintiff.

4. All other pending motions are denied as moot, and this case is terminated. All deadlines and settings on the Court's calendar are vacated.

5. If he wishes to appeal this judgment, Plaintiff must file a notice of appeal with this Court within thirty (30) days of the entry of judgment. Fed. R. App. P. 4(a)(4).

6. If he wishes to proceed *in forma pauperis* on appeal, Plaintiff's motion for leave to appeal *in forma pauperis* must identify the issues that he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective).

7. If he chooses to appeal, Plaintiff will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: August 28, 2025

s/Jonathan E. Hawley

U.S. District Judge